Ray HODGES, Plaintiff,

v.

Jack WATERS, individually and in his official capacity as a deputy in the Bulloch County Sheriff's Department, Defendant.

Civ. A. No. CV692–56.

United States District Court,
S.D. Georgia,
Statesboro Division.

Feb. 3, 1994.

John Grey Hunter, Savannah, GA, for plaintiff.

Steven David Barnhart, Barnhart, O'Quin & Williams, Atlanta, GA, for defendant.

## ORDER

BOWEN, District Judge.

Jack Waters, the Defendant, seeks summary judgment in his favor on Plaintiff Ray Hodges' Complaint. Summary judgment is appropriate.

## I. BACKGROUND

This lawsuit stems from an unfortunate incident that occurred at the scene of a very serious car accident involving Plaintiff's daughter. Bulloch County deputies arrested Plaintiff when he struck Defendant Waters, a Bulloch County deputy, in the face with his fist after Waters attempted to get Plaintiff to move away from the scene of the accident.

Following his arrest, Hodges was transported to the Bulloch County Jail. Plaintiff contends that Defendant Waters' conduct violated his Fourth Amendment rights. The parties' respective versions of events are not entirely consistent.

On December 14, 1990, Plaintiff Ray Hodges and his wife, Margaret Hodges, attended an American Legion Christmas party in Statesboro, Georgia. It is undisputed Plaintiff was drinking (one or more) alcoholic beverages at the party, although he maintains he was sober. The Hodges' adopted granddaughter, Crystal Shannon Hodges, stopped by the party shortly before midnight to let them know she would stay overnight at a friend's home. Soon thereafter, about midnight, Plaintiff went outside the building to load his car, preparing to leave the party. He heard a loud noise he knew to be an auto accident, which occurred very nearby. He reentered the building and commented to friends about the collision, then continued to load his car. Plaintiff and Mrs. Hodges left the party in their car. Plaintiff contends he had one drink before leaving, and took another with him for the ride home but did not finish it.

The Hodges saw the wrecked cars from their car shortly after leaving the party. They did not intend to stop, until a friend told them that Crystal was in the accident. "Panic stricken," they immediately left their car and ran to the wrecked vehicles. (Dep. of Ray Hodges at 5.) They were among the first to arrive at the scene. Crystal and her friend were lying motionless inside their vehicle, apparently dead or unconscious.[1] Emergency vehicles pulled onto the scene just after the Hodges arrived. A crowd eventually gathered and began closing in to view the accident scene.

The parties disagree whether Plaintiff in any way interfered with emergency medical technicians (EMTs) attending to Crystal. There is no dispute that Plaintiff was severely distraught, as was Mrs. Hodges—understandably so. The circumstances were undeniably emotionally charged. Defendant Waters states that David Wells, one of two EMTs attending to Crystal, advised him to move the crowd back. (Dep. of Jack Waters at 47.) Pursuant to Wells' instructions, Waters maintains that he verbally instructed Hodges to move back. According to Waters, Hodges complied initially but came back later, frustrated that Crystal had not yet been removed from the vehicle. Defendant Waters contends Plaintiff ignored his repeated verbal requests that Plaintiff stay away from the accident scene and was in fact moving toward the vehicle when he "intercepted" Plaintiff. Waters alleges that Plaintiff cursed him and then swung at him. *Id.* at 47–48.

Plaintiff contends that although he was very near Crystal, he never touched her or the car, or otherwise interfered in any way. Plaintiff maintains that he knelt a few feet from Crystal's vehicle and from there called to her, trying to see if she was alive. He alleges that "without warning or identification the Defendant grasped [him] by his belt in the rear middle of his back and the collar of his shirt and started dragging him away as someone might move a bag of trash." (Compl. ¶ 8.) Plaintiff contends that as a reflex he "swatted around" at the person, (Aff. of Ray Hodges ¶ 17), not knowing who that person was.

It is undisputed that Plaintiff struck Waters. The blow caused Waters to lose his balance and fall. Several other deputies immediately wrestled Plaintiff to the ground and Waters got up and handcuffed Plaintiff. Plaintiff was then carried in an upright position to a police car. Plaintiff admits that from the time he was wrestled to the ground he "was irrate [sic] and resisted [arrest] by whatever means were available to him." (Pl.'s Br., Apr. 7, 1993, at 4.)

After being placed in the patrol car, Plaintiff began violently and repeatedly kicking the door and cursing loudly at the deputies. When Plaintiff refused to quit, Defendant Waters opened the door and struck Plaintiff's legs below the knee twice with a small flashlight. (*See* Def.'s Stat. of Mat. Facts ¶ 13 and Local Rule 6.6.) Nevertheless, Plaintiff Hodges continued to kick. Another deputy eventually entered the back seat with Plain-

1. Tragically, Crystal's friend was dead.

tiff and physically restrained Plaintiff, who was on the floor of the car kicking, from kicking while the car was driven to the police station. Plaintiff was released later that morning.

Plaintiff brought this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, alleging Defendant Waters violated his Fourth Amendment rights. The other Bulloch County deputies who arrested Plaintiff are not defendants. Defendant counterclaimed for assault and battery. Defendant Waters seeks summary judgment, contending he did not violate Plaintiff's Fourth Amendment rights as a matter of law and that, in any event, he is protected from suit by qualified immunity.

## II. ANALYSIS

### 1. *Requirements for Summary Judgment*

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case ..., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot

meet its burden of proof at trial, *see Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark*, 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried his burden as set forth above. *See Clark*, 929 F.2d at 609 n. 9.

Plaintiff's federal claims are asserted pursuant to 42 U.S.C. § 1983.[2] Section 1983

---

**2.** Although the Complaint cites § 1985 as well,     Plaintiff does not allege a conspiracy to violate

provides a remedy for deprivations of federal rights. *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir.1987). Section 1983 requires proof of a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States and that the deprivation was at the hands of a person or persons acting under color of law. *Id.* There is no dispute that at all relevant times, Defendant Waters acted under color of Georgia law.

■ A claim that an arresting law enforcement officer used excessive force is analyzed under the Fourth Amendment, *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), which proscribes "unreasonable" seizures. A "seizure" that triggers Fourth Amendment protection obtains where the government "by means of physical force or show of authority ... in some way restrained the liberty of a citizen[.]" *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1878 n. 16, 20 L.Ed.2d 889 (1968). The seizures by Defendant Waters at issue in this case are his alleged "grabbing" Plaintiff by his clothes and "dragging" him away from the wrecked car and, in the patrol car, the strikes to Plaintiff's shins with a flashlight. It is significant that Plaintiff does not name the other deputies as defendants; from the Complaint, the force applied to restrain Plaintiff after he struck Defendant Waters and resisted arrest, and before the flashlight incident in the patrol car, is not a basis of Plaintiff's Fourth Amendment claim against Waters.

Whether a seizure is reasonable is determined objectively, "in light of the facts and circumstances confronting [the arresting officer], without regard to [the officer's] underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872; *see also Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985); *Gilmere v. City of Atlanta, Ga.,* 774 F.2d 1495, 1502 (11th Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). The Court must "balance the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). "[T]he scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" are relevant factors to consider. *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). *See generally Gilmere,* 774 F.2d at 1502.

### 2. *Summary Judgment in this case*

Defendant correctly argues that qualified immunity applies to him in this case. "Qualified immunity" protects public officials from individual liability for discretionary acts that do not violate "clearly established statutes or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[3]

■ Due to the expense and diversion of energy attendant to defending a lawsuit, however, qualified immunity is protection from *suit,* not just liability. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Immunity is "effectively lost if a case is erroneously permitted to go to trial," *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); hence, the plaintiff's burden of proof to overcome qualified immunity at summary judgment is stringent. "[T]o defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir. 1993).

Plaintiff alleges that Waters "failed to identify himself and approached him from the rear, grasped him without warning and started dragging him away [from his daugh-

---

his civil rights. Plaintiff's § 1985 claim is therefore dismissed *sua sponte.*

3. There is no dispute that Waters' conduct was discretionary. (*See* Def.'s Stat. of Mat. Facts ¶ 24 and Local Rule 6.6.)

ter's car]," (Pl.'s Br., Apr. 7, 1993, at 7), thereby violating his Fourth Amendment rights. Plaintiff contends that Waters' conduct was unreasonable for purposes of the Fourth Amendment because "Plaintiff was never [sic] resisted prior to the arrest, was never an immediate threat to the safety of the officers or others, never committed a crime and never attempted to evade arrest by flight." *Id.* at 8.

■ If Plaintiff was not interfering in any way with police or EMTs and without warning or identification Defendant Waters began to "drag" Plaintiff away "as someone might move a bag of trash," indeed a reasonable officer in Defendant Waters' position could find such conduct unjustified. At summary judgment, however, faced with admissible, competent evidence by the movant controverting Plaintiff's allegations in this regard,[4] Plaintiff's cryptic characterization of the amount of force used by Waters as "dragging" him is unpersuasive. Accepting as true Plaintiff's evidence that he received no warning before the initial physical contact,[5] Plaintiff fails to produce adequate summary judgment proof to support his allegation that Deputy Waters simply came up from behind him and began to "drag" him away from the scene.

Much of Plaintiff's deposition testimony concerns the degree of force used by the other deputies in arresting Plaintiff. Nothing in his own deposition would lead a reasonable jury to conclude that without warning or provocation he was "dragged" by Defendant Waters.[6] Nor does any other evidence of record provide meaningful support for this contention. Margaret Hodges and Ray Hendrix admit they did not see the initial physical confrontation. (Aff. of Margaret Hodges ¶ 13; Aff. of Ray Hendrix ¶ 15.) Plaintiff's affidavit merely repeats the Complaint's conclusory allegations, stating that "someone grabbed me from behind and started draging [sic] me backwards," (Aff. of Ray Hodges ¶ 15), and is unconvincing without independent supporting evidence. In light of the totality of the summary judgment evidence, Plaintiff's claim that he was "dragged" is patently false.

■ Assuming, however, that Deputy Waters did grab Plaintiff in some fashion and began to pull him away from the wrecked car (*see* R. Hodges Dep. at 10, 31–32), even without first verbally warning Plaintiff to move back, this conduct would not amount to a violation of Plaintiff's Fourth Amendment rights judged by a reasonable officer on the scene. Plaintiff clearly believes he was not interfering with police or EMTs (Who would knowingly interfere with an EMT under these circumstances?), but his perception of whether he interfered is irrelevant here. Qualified immunity analysis requires the Court to determine whether a reasonable officer in Waters' shoes would have thought Waters' acts unjustified, *Post,* 7 F.3d at 1556–57; that is, what response to Hodges' behavior—*as perceived by a reasonable officer,* not Hodges—would a reasonable officer on the scene consider justified? Defendant Waters, and the EMTs upon whose instructions he acted, perceived Hodges' behavior as

---

4. Aff. of Charles D. Hendrix ¶ 8; Aff. of Tracy L. Miller ¶¶ 6, 7; Aff. of Phalor N. Paulk ¶¶ 3, 4; Waters' Dep. at 46–48.

5. Although accepted as true for purposes of Defendant's motion, this contention seems unlikely on the evidence presented thus far. In support of this contention, Plaintiff submits his personal affidavit and that of his wife and Ray Hendrix, a friend who was present, averring that they heard no warning prior to the engagement between Waters and Hodges. It appears more likely that as a result of the wrenching situation confronting them, Plaintiff, Mrs. Hodges, and Hendrix did not hear instructions from Officer Waters that *were* given. Ample evidence tendered by Defendant Waters supports his contention that he instructed Plaintiff to move.

6. Plaintiff's deposition testimony describes the initial physical contact with Waters as follows:

And the EMS was coming to a stop behind [Crystal's] car. I don't know how many EMS vehicles showed up out there. But the one with the big body with the lights running all over across the top up there was coming—was rolling to a stop right behind her car.

And I felt myself go back. And I was on my knees, and I felt myself go back sort of. And it was pretty serious business to me. And I hit just like that across with this hand toward the back.

(R. Hodges Dep. at 10; *see also id.* at 31–32.) Further, Plaintiff conceded during his deposition that he was not "dragged" to the patrol car following his arrest. (R. Hodges Dep. at 64.)

interference, or imminent interference.[7] Consistent with Hodges' undisputed consumption of alcohol moments before the incident in question (R. Hodges Dep. at 59), all three suspected Hodges was intoxicated and agree he acted agitated and irrational. (Grice Aff. ¶ 7; Wells Aff. ¶ 7; Waters Dep. at 58–59.) To them he posed an immediate threat to Crystal's safety. Unrebutted evidence establishes that the EMTs needed and requested of Waters that the crowds be kept back so that they could do their jobs. Deputy Waters had a duty to secure the scene for the benefit of the EMTs; ironically, this meant protecting Crystal from inadvertent interference by Plaintiff. To a reasonable officer present, the intrusion on Plaintiff's federal rights, if any, by grabbing him and pulling him away from the accident scene would be justified by the strong governmental interest in securing the scene of a very serious car accident.

■ Although the Complaint describes the entire chain of events relative to Plaintiff's arrest in support of his § 1983 cause of action, from Plaintiff's brief he does not contend that Waters' striking his shins in the patrol car violated his constitutional rights. (Pl.'s Br., Apr. 7, 1993, at 3–7.) The Court notes, however, that qualified immunity extends to this action. Plaintiff admits unapologetically that he repeatedly kicked the door, thinking he "could break the [door] lock" and free himself. (R. Hodges Dep. at 14.)[8] Defendant Waters deposed that Hodges' kicking bent the top of the patrol car door out six or seven inches. (Waters Dep. at 49.) Waters was justified in using some force to restrain Plaintiff, obviously under considerable stress, to prevent him from seriously injuring himself. The Court cannot find that no reasonable officer would believe the force used—striking Plaintiff twice in the shins with a flashlight—was justified. There were no serious lacerations, no bones were broken,

7. DeWayne Grice, one of the EMTs, explains as follows:

> The collision was a high impact collision. We were very concerned about potential spinal injury [to Crystal], and exercised a high degree of caution. We were trying to open the driver's airway with minimum movement and no break in contact with the patient. The emergency prognosis was not good. Mr. Hodges' daughter appeared to be in very critical condition.
>
> I remember hearing Ray Hodges yelling something, and moving straight toward his daughter. I thought he was going to bump me out of the way. He was approaching in a state of obvious panic. He was highly agitated.
>
> Although the situation was emotionally charged, I was surprised at Mr. Hodges' aggressive response. He clearly was attempting to interfere. Ordinarily, even distraught family members recognize the need to stand clear and allow us to work. He appeared to me to be intoxicated.
>
> In any event, as Mr. Hodges was approaching, I heard Jack Waters say something like "Let them do their job". Mr. Hodges stopped momentarily and I thought he had backed off. Then he quickly engaged Jack Waters. Although I did not see exactly what happened, I had the clear impression that Mr. Hodges was the aggressor. I believe several deputies were then involved in trying to subdue Mr. Hodges, but once the danger of his interference had been removed, I turned all my attentions back to his daughter.
>
> As I indicated earlier, the emergency prognosis was not good, and the situation was critical when I first arrived. Fortunately, as we now know, Crystal Hodges had not suffered a spinal injury. However, had there been such an injury, creating spinal instability, Mr. Hodges might very well have paralyzed his daughter, or caused oxygen deprivation, brain damage, or even death, had he bumped David [Wells] or me as we were working on Crystal Hodges.
>
> It was critically important that the area be cleared, and particularly important that we be protected from interference by Mr. Hodges, whose response to the situation was certainly not as rational as we would ordinarily expect, even from a family member. I appreciate very much the efforts of Jack Waters, and I believe it to have been critically important that he intervened to protect against interference.

(Aff. of Wayne Grice ¶¶ 5–10; see also Aff. of David Wells ¶ 6; Waters Dep. at 46–48.)

8. Plaintiff's violent behavior, although unacceptable, is understandable to some extent. In the patrol car, Plaintiff still did not know what his daughter's condition was.

> And I sat there [in the back of the patrol car] for a few seconds, [and thought] man, this ain't getting it. There's my wife out there with the possibility of her daughter dead, nobody left with her, and here's Ray in the car all handcuffed.
>
> And I laid down. I just turned my body and slid off the seat right in the floor.... And I proceeded to kick.

(R. Hodges Dep. at 14.) Nevertheless, his conduct made a trying situation that much worse for himself and his wife.

no lasting or significant injuries of any type, only "nickel" size bruises, as Plaintiff described them, that healed "within a week to 10 days, five days, you know, just a bruise." (R. Hodges Dep. at 28.) Because qualified immunity bars further litigation of Plaintiff's § 1983 claim against Defendant Waters in his individual capacity, Waters' other argument—that Plaintiff's factual contentions as a matter of law do not support a finding of excessive force—is not addressed.

 Although qualified immunity shields Defendant Waters in his individual capacity as a Bulloch County deputy, Plaintiff also brought this action against Waters in his official capacity. This claim is effectively against Bulloch County. Qualified immunity does not apply to governmental entities, only government officials acting pursuant to their discretionary authority. To implicate the County, Plaintiff must show that some policy, custom, or practice of the County was the "moving force" of a constitutional violation. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981); *Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211–14 (11th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 636, — L.Ed.2d — (1993). Plaintiff makes no argument in this regard nor tenders any evidence, and apparently does not really mean to pursue the County. Thus, Defendant Waters is also entitled to prevail on Plaintiff's Fourth Amendment claim against him in his official capacity.

Defendant Waters' Motion for Summary Judgment is **GRANTED**. Since as a matter of law Plaintiff cannot be the "prevailing party" on his § 1983 claim as required under § 1988 to recover attorney's fees, his § 1988 claim fails as well. The Complaint is **DISMISSED**. Defendant Waters' counterclaim is **DISMISSED** for lack of jurisdiction. *See* 28 U.S.C. § 1367(c)(3). The Clerk is instructed to **CLOSE** this case, taxing costs against Plaintiff Ray Hodges.

ORDER ENTERED.